IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO MUNICIPAL UTILITY
DISTRICT, a municipal utility
district,

          Plaintiff,

   v.                               CIV. NO. S-05-617 LKK/GGH

FRU-CON CONSTRUCTION CORPORATION,     O R D E R
a corporation; A. TEICHERT & SON,
INC., aka TEICHERT CONSTRUCTION,
a California corporation,

          Defendants.
_____/

    On February 28, 2005, the Sacramento Municipal Utility District ("the District") filed this action in the Superior Court of the State of California naming as defendants Fru-Con Construction Corp. ("Fru-Con"), a foreign corporation, and A. Teichert & Son, Inc. ("Teichert"), a California corporation. On March 29, 2005, defendant Fru-Con removed the action asserting that the District fraudulently joined Teichert as a defendant in order to deprive this court of jurisdiction. The District now seeks to

1

have this action remanded. I decide the motion based on the papers and pleadings filed herein and after oral argument.

## I.

## BACKGROUND

Plaintiff is a municipal utility district that generates, transmits, and distributes electric power. The District owns and/or operates various power generation facilities. In order to meet its projected power needs, the District initiated the construction of the Cosumnes Power Plant Project (the "Project"). The overall Project involves construction of a nominal 1,000 MW gas fired, combined cycle power plant complex at the District's Rancho Seco site in Herald, California. The Project consists of two phases, with Phase I generating 500 MW of power through construction of two combustion turbine generators, two heat recovery steam generators and a steam turbine generator.

Fru-Con is a general and mechanical construction contractor incorporated in the State of Missouri with its principal place of business in Ballwin, Missouri. The District and Fru-Con entered into a contract for the construction of Phase I of the Project for the sum of $106,843,527.

Teichert is a Fru-Con subcontractor which performed grading associated with the project. The District alleges that Teichert damaged its property while performing the subcontracting work.

////

////

////

## II.

### STANDARD

Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires that there be complete diversity, that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. Id.  A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing that defendant, or in other words, when that defendant has been fraudulently joined. McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987).

"'[F]raudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.'" Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.1998) (quoting McCabe, 811 F.2d at 1339). Where a non-diverse defendant has been "fraudulently joined" to an otherwise completely diverse case, that defendant is disregarded for diversity jurisdiction purposes. See, e.g., Calero v. Unisys Corp., 271 F Supp 2d 1172, 1176 (N.D. Cal. 2003).

On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-404 (9th Cir. 1996).

1  Thus, the defendant carries a high burden of establishing that the
2  non-diverse party was fraudulently joined.  See Gaus v. Miles,
3  Inc., 980 F.2d 564 (9th Cir. 1992).  28 U.S.C. § 1447(c) provides
4  that a case removed from state court should be remanded if it
5  appears that the case was removed improvidently or without
6  jurisdiction.  Federal jurisdiction must be rejected if there is
7  any doubt as to the right of removal.  Id. at 566.

8   In determining whether a non-diverse defendant has been
9  improperly joined, courts may look beyond the pleadings and examine
10 the factual record.  McCabe, 811 F.2d at 1339.

**IV.**

**ANALYSIS**

13    Fru-Con premises its assertion of fraudulent joinder on a
14 contention that, despite appearances, plaintiff's suit presents
15 no cognizable claim against Teichert.  Below, I examine
16 plaintiff's claim that there are viable causes of action lying
17 in negligence and equitable indemnity.

18 **A.   NEGLIGENCE**

19    The District concedes that there is no privity of contract
20 between it and Teichert.  It also concedes that under California
21 law, a construction contractor with whom there is no privity of
22 contract is not liable in negligence unless the plaintiff has
23 suffered personal injury or property damage.  See Stewart v. Cox,
24 55 Cal.2d 857, 861 863 (1961); Aas v. Super. Ct., 24 Cal.4th
25 627, 652-53 (2000).  Fru-Con asserts that the District claims
26 only economic damages and thus fails to allege that it suffered

4

1  property damage as a result of Teichert's actions.

2      The District's complaint alleges that Teichert "exceeded
3  the boundaries for grading the south laydown area," thereby
4  potentially causing damage to endangered or threatened species.
5  Complaint at 13.  The complaint then states that Teichert
6  "damage[d] the District's property" and that the District has
7  "suffered damages as a result." Id. at 14.  Although the
8  allegations as stated in the complaint are general in nature and
9  do not specify what damages it seeks to recover for, the
10 District has filed declarations in support of its motion to
11 remand which present additional facts purporting to show that
12 its cause of action against Teichert is viable.

13     The District asserts that Teichert was to perform grading
14 work on the District's property for a "laydown area" where the
15 District and Fru-Con would store equipment and other materials
16 to be used during construction.  According to Wayne Lundstrum,
17 Supervisor-Property Administrator in the District's Real Estate
18 Services, the District owns both the real property designated
19 for the laydown area and the property adjacent to it.  Decl. of
20 Wayne Lundstrum at 2.  Further, and as conceded by Fru-Con, the
21 District's property encompasses federally-protected wetlands,
22 including a protected habitat for an endangered species of
23 shrimp.  Before commencing construction on Phase I of the Plant,
24 the District obtained a permit for the construction around the
25 wetlands under § 404 of the Clean Water Act (CWA), 33 U.S.C.
26 ////

§ 1344(a).[1]  The District asserts that the laydown area is an integral part of the overall project plan and was specifically addressed and provided for in various permits obtained for the Phase I Plant.  Decl. of Colin Taylor ¶ 7.

The District asserts that Teichert damaged its property in the course of its subcontracting work in two ways.  One, Teichert ignored the specified property boundaries for the laydown area and entered upon adjacent property owned by the District without its permission, Decl. of Wayne Lundstrum, and graded and spread dirt across that property.  Second, Teichert filled a portion of a vernal pool on the District's adjacent property that is a habitat for two federally-listed vernal pool crustacean species.  This second action allegedly altered its property in a manner not permitted by the Section 404 permit.  As a consequence, the District has been required by the U.S. Army Corps of Engineers to perform certain remedial work on the property adjacent to the laydown area and by the U.S. Fish and Wildlife Services to undertake mitigation actions.  Decl. of Colin Taylor ¶ 8.  The District maintains that these allegations suffice to state a cause of action against Teichert for negligence.

---

[1] The Federal Government has imposed restrictions on commercial construction activities near vernal pools based on the Endangered Species Act (the "ESA"). That statute, 16 U.S.C. § 1531 et seq., was enacted in 1973 to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved to provide a program for the conservation of such endangered species...." 16 U.S.C. § 1531(b).

In response, Fru-Con contends that neither of Teichert's actions resulted in damage to the District's property. Fru-Con first asserts that the spreading of excavated dirt on the District's adjacent property cannot be said to have damaged that property because "the small amount of dirt spread" has not "negatively impacted in any way, shape or form the District's ability to use its property."[2] The argument is unconvincing. Fru-Con essentially concedes that Teichert graded and altered the District's land, but argues that such actions were harmless. It offers no evidence, however, to support its contention. Further, it does not cite to any legal authority to challenge plaintiff's contention that the unauthorized alteration of its property amounts to property damage.[3] Further, whether additional injury, such as restricted use of its property, flows from the alleged alteration addresses the question of damages, not liability.[4]

---

[2] Defendant's characterization of the quantity of dirt as "small" is undermined by its own admission that the Army Corps of Engineers notified the District that "[s]oil had been laid approximately ten feet over the laydown boundary line for a length of 50 feet along the western boundary." Def's Oppo. Br. at 8.

[3] Even if, assuming arguendo, there were an ambiguity in state law on this question, "the court must resolve [the] ambiguit[y] . . . in plaintiff's favor." Macey v. Allstate Property and Cas., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002); Diaz v. Allstate Ins. Group, 185 F.R.D. 581 (C.D.Cal. 1998), because there is a presumption against fraudulent joinder and federal jurisdiction must be rejected if there is any doubt as to the defendant's right of removal, Gaus, 980 F.2d at 566.

[4] For yet another reason, Fru-Con's contention that plaintiff's failure to present evidence concerning additional damage defeats its claim must fail. Under notice pleading,

7

Fru-Con, apparently concerned that the court might reject its argument based upon the violation of the § 404 permit, claims that the District may not bring a negligence claim against Teichert based upon the alleged damage to the vernal pool. Fru-Con asserts that this claim concerns physical injury to the federally-protected habitat and therefore cannot constitute damage to the District's property, because it has no proprietary interest in the habitat or the species. According to Fru-Con, the District can complain only of economic injuries as a result of the fines imposed and measures required by the federal government. Once again, I cannot agree.

While it is true that the District incurred economic injuries as a result of the damage to the vernal pools, the filling of the vernal pool was itself an unauthorized alteration of its property, and thus sufficient to support its claim. The District does not assert a proprietary interest in the species or habitat qua habitat, and does not ground its negligence claim based on any damage to them. Rather, the District alleges that the vernal pool located on its property was altered by Teichert. Further, because the alteration was in violation of the property's use restrictions, the District was required to restore its property to the condition it was in before Teichert

---

detailed allegations of injury are not required. Again, given the strong presumptions against a finding of fraudulent joinder and Fru-Con burden of persuasion, plaintiff's allegedly deficient pleading is irrelevant. Emrich v. Touch Ross & Co., 846 F.2d 1190, 1193, 1195 (9th Cir. 1988).

8

1  went onto the land.  Whether the District may ultimately prevail
2  on this claim or not, it has sufficiently stated a cause of
3  action against Teichert.[5]  <u>Continental Ins. Co. v. Foss Maritime</u>
4  <u>Co.</u>, 2002 WL 31414315 (N.D. Cal. 2002)("The standard is not
5  whether plaintiffs will actually or even probably prevail on the
6  merits, but whether there is any possibility that they may do
7  so.")[6]

**B.   EQUITABLE INDEMNITY**

The District also maintains that it may properly state a
cause of action against Teichert for equitable indemnity based
on the alleged negligent grading activity.  Defendant disagrees,
citing to <u>BFCG Architects Planners, Inc. v. Forcum/Mackey</u>
<u>Construction, Inc.</u>, 119 Cal.App.4th 848, 852 (2004).  <u>BFCG</u>
stands for the proposition that for equitable indemnity to
apply, there must first be some basis for tort liability against
the proposed indemnitor.  Because, as explained above, I have
concluded that the District may bring a negligence cause of
action against Teichert, <u>BFCG</u> supports the District's contention

---

[5] The court need not resolve whether the District may also seek recovery for economic injuries resulting from payment of fines.

[6] Fru-Con also attempts to defeat the District's allegations by asserting that the District's personnel directed Teichert to go beyond the lay-down boundary, suggesting that it not only had permission but was ordered to act in the manner now complained of. The District, of course, asserts that Teichert went onto the property in question without its permission. While the defendant may certainly raise the defense of consent in litigating the merits of plaintiff's cause of action, the factual dispute does not demonstrate that plaintiff has not stated a proper cause of action.

9

1  that it may also bring a claim based on equitable indemnity.

**C.  INDISPENSABLE PARTIES**

Lastly, Fru-Con asserts that the court should disregard Teichert in determining subject matter jurisdiction because it is not an indispensable party. That contention also does not lie. It is well established that the citizenship of a non-diverse defendant who is a proper party, though not an indispensable party, must be considered when determining the existence of diversity jurisdiction. Matthew v. Coppin, 32 F.2d 100, 102 (9th Cir. 1929). Here, as the master of its complaint, the District properly seeks to hold Teichert liable for negligence jointly with Fru-Con.

For the reasons explained above, Fru-Con has not met its burden of establishing that Teichert was fraudulently joined.[7]

**D.  ATTORNEYS' FEES AND COSTS ARE NOT WARRANTED**

The District requests an award of costs and attorneys' fees incurred in bringing its motion to remand. Section 1447(c) of Title 28 of the United States Code provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. The award of fees is within the discretion of the district court. Moore v. Permanente Med. Group. Inc., 981 F.2d 443, 446 (9th Cir. 1992).

////

---

[7] Defendant Fru-Con's motion to drop a party and defendant Teichert's motion to dismiss are therefore rendered moot.

10

An award of attorneys' fees and costs is not warranted in the instant matter. Although ultimately unconvincing, defendant's contentions were hardly frivolous, and there is nothing showing that removal was motivated by bad faith. Moreover, defendant's removal does not appear to have resulted in unreasonable delay or prejudice.

## V.

## CONCLUSION

For all the foregoing reasons, the court hereby ORDERS as follows:

1. Plaintiff's motion to remand is GRANTED, and this action is REMANDED to the Superior Court from which it was removed.

2. Plaintiff's request for attorneys' fees and costs is DENIED.

3. The District's motion to stay in the related case, Fru-Con v. Sacramento Municipal Utility Dist., No. Civ. S-05-583 LKK, is now RE-SET, to be heard on this court's law and motion calendar on June 13, 2005 at 10:00 a.m. in Courtroom No. 4.

IT IS SO ORDERED.

DATED: May 26, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT